IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RICKY LEWIS WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-040 |
| | ) | |
| WILLIAM DANFORTH, Former Warden; | ) | |
| FRED GAMMAGE, Deputy Warden of | ) | |
| Security, Telfair State Prison; ROBERT | ) | |
| TOOLE, Field Operations Officer, Georgia | ) | |
| Department of Correction; TERENCE | ) | |
| KILPATRICK, Unit Manager, Telfair | ) | |
| State Prison; ZACHARY MIXON, | ) | |
| Sergeant of CERT Team, Telfair State | ) | |
| Prison; PHILLIP HALL, Warden; and | ) | |
| RODNEY MCCLOUD, Unit Manager, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, brought this

case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*

("IFP"). The Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be

**GRANTED IN PART** and **DENIED IN PART** (doc. no. 63) and all claims for monetary

relief against Defendants be **DISMISSED**.

# I. BACKGROUND

## A. Factual Background

With respect to the remaining defendants in this action, Plaintiff alleges the following facts, which must be taken as true for purposes of the motion to dismiss.

On November 25, 2011, unnamed and unknown assailants assaulted Plaintiff at Hancock State Prison. (Doc. no. 38, p. 5.) On May 23, 2014, Plaintiff was transferred to TSP, and immediately notified Defendant Danforth of his belief that his previous assailants were also housed at TSP and posed a threat to Plaintiff's safety. (Id. at 8.) Plaintiff also informed Unit Manager Jacob Beasley of his safety concerns, believing members of the gangs which assaulted him were housed in the same dorm. (Id.) Both Beasley and Defendant Danforth ignored Plaintiff's pleas and concerns. (Id.)

Plaintiff alleges Defendants Danforth, Gammage, Kilpatrick, Mixon, Toole, McCloud, and Hall have given supervisory and disciplinary authority to gang leaders and allowed gang leaders to govern gang members and other inmates through violence. (Id. at 9-12.) Plaintiff further alleges these Defendants have instructed gang leaders to respond to each other with violence, and, as a result, Plaintiff has been placed at a substantial risk of harm due to generalized conditions of dangerousness. (Id.) Plaintiff alleges he informed these Defendants of his safety concerns, and they ignored his pleas and grievances, allowing the gang violence and attacks at TSP to escalate. (Id.) On one occasion, gang violence and stabbings occurred and Plaintiff was roughly pushed as he fled to hide in a cell in fear of his life. (Id. at 10.)

## B. Grievance History

Plaintiff filed four grievances regarding the allegations in his complaint. He filed

grievance number 173822 on May 28, 2014, alleging he had been stabbed by inmates while incarcerated at Hancock State Prison, the inmates who stabbed him are currently at TSP, and he fears for his safety. (Doc. no. 63-5, p. 20.) On July 7, 2014, Warden Danforth evaluated and denied grievance 173822 on the ground Plaintiff provided no specific details regarding his concerns. (Id. at 21.) On August 14, 2014, the Central Office denied his appeal. (Id. at 17.)

Plaintiff filed grievance number 178451 on July 21, 2014, alleging he had been "denied [his] right to an appeal" on June 19, 2014, which created a "significant threat to [his] safety and welfare . . . ." (Id. at 31.) On August 5, 2014, Warden Danforth evaluated and denied grievance 178451 on the ground Plaintiff filed the grievance outside the time frame established by the policies. (Id. at 35.) On October 15, 2014, the Central Office denied his appeal. (Id. at 28.)

Plaintiff filed grievance number 209270 on December 10, 2015, alleging from December 1, 2015, through December 3, 2015, Defendants Toole, Upton, Dansforth, and Gammage "allowed groups to be formed under their own authority to govern themselves causing brutal violence and war . . . ." (Id. at 7.) Plaintiff claimed Defendants' inaction "establish[ed] deliberate indifference to [his] welfare and safety . . . ." (Id.) On December 30, 2015, Warden Danforth evaluated and denied grievance 209270 on the ground Plaintiff raised more than one issue in the grievance. (Id. at 5.) On February 25, 2016, the Central Office denied his appeal. (Id. at 2.)

Plaintiff filed grievance number 214894 on March 10, 2016, alleging on March 3, 2016, a "gang member" was stabbed in Room 117 in B2. (Id. at 13.) Plaintiff alleged prison officials "did not take reasonable measures to guarantee [his] safety . . . under conditions posing a substantial risk of serious harm . . . ." (Id.) Plaintiff also alleged officials "allow[ed] the forming and gathering of groups and gangs . . . giving the leaders authority to oversee . . . security [on] their own . . . ." (Id.) On April 15, 2016, Warden Hall evaluated and denied grievance 214894 on the ground Plaintiff was not involved in the altercation and provided no evidence to substantiate his allegations. (Id. at 10.) Plaintiff did not appeal the denial of grievance 214894. (Doc. no. 63-4.)

## II. DISCUSSION

### A. Plaintiff's Exhaustion of Administrative Remedies

#### 1. The Legal Framework

The Eleventh Circuit formulated a two-step inquiry for evaluating motions to dismiss based on failure to exhaust administrative remedies. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), cert. denied, 555 U.S. 1074 (2008)).

If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its

findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

5

Additionally, "implicit in [the exhaustion] requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses." Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000); see also Sewell v. Ramsey, No. CV 406-159, 2007 WL 201269, at *3 (S.D. Ga. Jan. 24, 2007) ("a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally"). This does not require a prisoner to provide information he does not have or cannot reasonably obtain, but it does require a prisoner to include "relevant information about his claims, including the identity of those directly involved in the alleged deprivation . . . ." Brown, 212 F.3d at 1210; see also Thompson v. Corr. Corp. of Am., No. CV 510-069, 2011 WL 6941680, at *3 (S.D. Ga. Aug. 30, 2011), report and recommendation adopted, No. CV 510-069, 2012 WL 12682 (S.D. Ga. Jan. 3, 2012), aff'd, 485 F. App'x 345 (11th Cir. 2012) ("Plaintiff need not have used any particular words or phrases in his informal grievances. Nevertheless, there must be some assertion set forth in a grievance, whether informal or formal, which would alert the person against whom the grievance was filed that the inmate's complaint concerned him or her.").

Because exhaustion of administrative remedies is a precondition to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy,

[or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

## 2. The Applicable Administrative Grievance Procedure

Because the dates of the alleged incidents are between May 2014 and June 2016, the administrative grievance procedure applicable in this case is Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on December 10, 2012, and was revised on July 20, 2015.[1]  (See doc. no. 63-3.)  The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor.  SOP IIB05-0001 § VI(D)(1)-(3).  The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it.  Id. § VI(D)(3), (5)(a).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § VI(D)(4).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  See id. § VI(D)(5)(b)(2).  Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § VI(D)(7).

---

[1]The relevant provisions differ in one respect. The 2012 version of § VI(D)(7) states an appeal is received "by the Counselor" where the 2015 does not. (Doc. no. 63-3, pp. 13, 30.)

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(E).

### 3. Plaintiff Properly Exhausted His Administrative Remedies.

Plaintiff properly exhausted his administrative remedies as to his deliberate indifference claim in grievance 209270. However, Plaintiff failed to fully exhaust the administrative grievance process because (1) as to grievances 178451, 209270, and 214894, he did not follow the proper grievance procedure; (2) as to grievance 173822, he failed to meet the minimum specificity requirement. (Doc. nos. 63-1, pp. 4-5; 63-4; 63-5, pp. 2, 28.)

### a. Plaintiff Did Not Properly Exhaust His Administrative Remedies as to Grievances 178451 and 214894.

First, Plaintiff failed to exhaust the administrative grievance process as to grievance 178451 because he filed the grievance outside the ten-day time frame listed in SOP IIB05-0001 § VI(D)(4). (Doc. nos. 63-3, p. 8, 63-5, p. 28); Johnson, 418 F.3d at 1159 ("[A]n untimely grievance does not satisfy the exhaustion requirement of the PLRA."). Plaintiff filed grievance 178451 on July 21, 2014, complaining about events taking place on June 19, 2014. (Doc. no. 63-5, p. 28.) Thus, the grievance was untimely under SOP IIB05-0001 § VI(D)(4).

Second, Plaintiff failed to exhaust the administrative grievance process as to grievance 214894 because he did not appeal its denial. (See doc. no. 63-4.) Because

Plaintiff did not complete the administrative process, he failed to properly exhaust this claim. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159.

> **b.    Grievance 173822 Fails to Meet the Minimum Specificity Requirement.**

Plaintiff failed to exhaust the administrative grievance process as to grievance 173822 because it fails to satisfy the minimum specificity requirement. "While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim, he is required to 'provide as much relevant information as he reasonably can in the administrative grievance process.'" Williams v. Barrow, 559 F. App'x 979, 986 (11th Cir. 2014) (citing Jones v. Bock, 549 U.S. 199, 219 (2007) and Brown, 212 F.3d at 1207). Indeed, "[t]he critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." Toenninges v. Georgia Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015).

Plaintiff's grievance was denied because he did not provide specific information regarding his personal safety concerns. (Doc. no. 63-5, p. 21.) In his grievance form, Plaintiff indicated "[t]he same inmates who stabbed [him] at [Hancock State Prison] are currently being housed at Telfair State Prison," but did not provide any identifying information about those inmates, such as names, descriptions, or even gang affiliations. (Id. at 20.) Warden Danforth denied Plaintiff's grievance but instructed Plaintiff to "submit a written statement with specific information" and "appropriate measures will be taken at that time." (Id. at 21.) Plaintiff provided no additional identifying information in his grievance

appeal form, (id. at 19), and his appeal was denied for failing to identify the inmates he feared (id. at 16). Plaintiff did not file another grievance regarding this issue.

While Plaintiff was in the best position to inform the officials at TSP about his concerns, he did not identify the prisoners he feared at any stage of the grievance procedure. Plaintiff failed to provide "as much relevant information as he reasonably [could] in the administrative grievance process." Williams, 559 F. App'x at 986. Thus, the grievance was not specific enough to "provide the institution with notice of a problem such that they have an opportunity to address the problem internally." Toenninges, 600 F. App'x at 649.

### c. Plaintiff Properly Exhausted His Administrative Remedies as to Grievance 209270.

Plaintiff properly exhausted the administrative grievance process as to grievance 209270. Plaintiff's grievance was denied initially and on appeal because it raised more than one issue and failed to address an issue affecting him personally, in violation of SOP IIB05-0001 §§ VI(D)(2), VI(B)(2)(a). (Doc. nos. 63-3, pp. 6, 8, 63-5, p. 2). In grievance 209270, Plaintiff alleged Defendants Toole, Dansforth, and Gammage violated statutes "created by the Department of Corrections and State Boards of Corrections" by allowing "groups to be formed under their own authority," the groups caused "brutal violence and war" at TSP on December 1st through 3rd, 2015, and by allowing the groups to be formed under their own authority, Defendants were deliberately indifferent to his welfare and safety. (Doc. no. 63-5, p. 7.) The Court fails to see how Plaintiff's grievance fails to concern him, as he alleges indifference to his personal welfare and safety. Nor does the grievance raise more than one issue. Plaintiff's grievance includes multiple facts related to one complaint; namely,

Defendants' improper actions resulted in gang violence, resulting in a threat to Plaintiff's safety, of which Defendants were aware. Thus, Plaintiff properly followed the administrative grievance procedure as to grievance 209270.

Additionally, Defendants contend grievance 209270 lacks the specificity required to exhaust Plaintiff's claims. (Doc. no. 63, pp. 4-6.) "While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim, he is required to 'provide as much relevant information as he reasonably can in the administrative grievance process.'" Williams v. Barrow, 559 F. App'x 979, 986 (11th Cir. 2014) (citing Jones v. Bock, 549 U.S. 199, 219 (2007) and Brown, 212 F.3d at 1207). Indeed, "[t]he critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." Toenninges v. Georgia Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015).

Plaintiff's grievance satisfies the minimal specificity requirement. Of the seven Defendants, Plaintiff listed three in grievance 209270, i.e., Toole, Danforth, and Gammage. Although Plaintiff does not specify the remaining four by name, he does provide enough information for Defendants to address the problem internally. See id. In his grievance, Plaintiff informs Defendants their "deliberate indifference" in "allowing groups to govern themselves and run quantlets threw out [sic] the institution" has "caused [him] to suffer." (Doc. no. 63-5, p. 2.) Moreover, Plaintiff specifies dates and acts of violence. (Id.) These allegations are almost identical to his allegations in his complaint and numerous other filings. Although it would have been preferable for Plaintiff to provide more information, including

all of Defendants' names, he provided "as much relevant information as he reasonably [could] in the administrative grievance process," which was all that was required. Williams, 559 F. App'x at 986. Accordingly, as Plaintiff properly exhausted the administrative process regarding his deliberate indifference claim, Defendants' motion to dismiss cannot be granted on the basis of exhaustion.

## B.     Legal Standard for Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

With these principles in mind, the Court turns its attention to the remaining arguments in the motion to dismiss that do not relate to the exhaustion issue.

### C. Plaintiff States a Valid Claim of Deliberate Indifference to Safety.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). To establish such a claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation.  Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005).  However, "confinement in a prison where violence and terror reign is actionable."  Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320).

In addition, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Lane, 835 F.3d at 1308.  However, "[i]nferences from circumstantial evidence . . . can be used to show that a prison official possessed the necessary knowledge."  Id.

Here, Plaintiff alleges sufficient facts to state a plausible claim of Defendants' deliberate indifference to a substantial risk of serious harm.  Plaintiff alleges Defendants have allowed widespread gang activity, including ceding authority to gang leaders to coordinate security, which in turn has caused numerous stabbings and beatings between inmates. (Doc. no. 38, pp. 9-12.)  Plaintiff describes a series of brutal attacks involving gang members occurring between December 2015 and March 2016.  (Id. at 12.)  Plaintiff also claims "civilian inmates" were also victims of gang violence.  (Id.)  These conditions are substantially similar to those the Eleventh Circuit held were sufficiently serious to violate the Eighth Amendment in Lane.  835 F.3d at 1307-08.  Thus, Plaintiff has satisfied the first deliberate indifference element.

Moreover, Plaintiff has alleged specific facts showing Defendants had subjective knowledge of the dangers of assaults by gang members. (See doc. no. 38, pp. 10-12.) Additionally, it can be reasonably inferred Defendants were aware of these circumstances alleged by virtue of their positions as prison officials concerned with the security and day-to-day operations at TSP. See Rhiner v. Jones, No. 2:15-CV-14319, 2016 WL 5024170, at *3 (S.D. Fla. Sept. 20, 2016) (holding knowledge could be inferred because of Defendants' positions as Warden and Assistant Warden). Thus, Plaintiff has satisfied the second deliberate indifference element.

Finally, Plaintiff has alleged sufficient facts to establish causation. Plaintiff clearly connects Defendants' actions and inactions to the excessively dangerous conditions at TSP. (See, e.g., doc. no. 38, pp. 10-12.) Thus, Plaintiff has satisfied the third deliberate indifference element.

Accordingly, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted must fail.

**D.    Plaintiff Does Not Seek to Hold Defendants Liable Based on a Theory of Supervisory Liability.**

Defendants argue Plaintiff's allegations are deficient to the extent he seeks to hold Defendants liable under a supervisory liability theory of recovery. (Doc. no. 63-1, pp. 12-16.) "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise,

supervisors, employers, and private contractors cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendants liable, Plaintiff must demonstrate either (1) Defendants actually participated in the alleged constitutional violation, or (2) there is a causal connection between Defendants' actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff alleges each Defendant, through his actions or omission, is responsible for the widespread gang activity at TSP. (Doc. no. 38, pp. 9-12.) Thus, Plaintiff does not apparently seek to hold Defendants liable based on supervisory liability. Plaintiff's allegations that Defendants actually participated in the alleged constitutional violation is sufficient for individual liability. Hartley, 193 F.3d at 1269.

Furthermore, even in Plaintiff was seeking to hold Defendants liable based on supervisory liability, his allegations would provide a sufficient basis for these claims. A "causal connection" sufficient for supervisory liability can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged

deprivation, and he fails to do so." Brown, 906 F.2d at 671. Furthermore, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id.

Here, Plaintiff alleges Defendants have allowed gang activity throughout TSP, resulting in numerous stabbings and brutal attacks among inmates occurring between December 2015 and March 2016. (Doc. no. 38, pp. 9-12.) Plaintiff describes the specific instances of violence cited as part of an ongoing pattern of violent, gang-related incidents at TSP. (Id.) Thus, Defendants' failure to police and control gang activity within the prison would have constituted a widespread abuse sufficient to create notice of the need to correct the alleged deprivation. Brown, 906 F.2d at 671.

### E. Plaintiff Alleges Facts Sufficient to Survive Dismissal on the Basis of Qualified Immunity.

#### 1. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A defendant carries the initial burden of showing that the contested actions fall within his discretionary authority, then the burden shifts to the plaintiff to show (1) violation of a constitutional right; and (2) the right violated was clearly established at the time. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013) (citing Pearson, 555 U.S. at 232). Courts may assume for the sake of argument that a constitutional violation occurred and

grant summary judgment based on a finding that the right was not clearly established. <u>Pearson</u>, 555 U.S at 236.

A government official acts within his discretionary authority when he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004). To satisfy the first prong, the defendant "must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen within his legitimate job description." <u>Id.</u> at 1266 (emphasis in original). To satisfy the second prong, the defendant must be executing his job-related function "in an authorized manner." <u>Id.</u>

Plaintiff can demonstrate that the right violated was clearly established in three ways. First, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." <u>Terrell v. Smith, 668 F.3d 1244, 1257 (11th Cir. 2012).</u> Second, Plaintiff may show that "a materially similar case has already been decided" at the time of the incident by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. <u>Terrell</u>, 668 F.3d at 1255. This category consists of cases where "judicial precedents are tied to particularized facts." In assessing whether previous cases clearly establish the law, Courts ask whether the factual scenario that the official faced "is fairly distinguishable from the circumstances facing a government official" in a previous case. <u>Id.</u> at 1256 (citing <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1352 (11th Cir. 2002)). If so, the cases are not materially similar and, thus, provide insufficient notice to the official to clearly establish the law. <u>Terrell</u>, 668 F.3d at 1256.

Third, Plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." Id. "[S]ome broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." Id. (citing Vinyard, 311 F.3d at 1351). However, the principle must be established with "obvious clarity" by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court case law at the time of the alleged violation so that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Terrell, 668 F.3d at 1256.

### 2. The Complaint Sufficiently Alleges Violation of a Clearly Established Constitutional Right.

Here, even assuming Defendants can show they were acting within the scope of their discretionary authority, Defendants' actions as alleged of allowing such prevalent gang activity that Plaintiff lives in constant danger of violence would violate a constitutional right clearly established at the time of the incident. See, e.g. Lane, 835 F. 3d at 1307-08 (holding presence of substantial gang population, numerous stabbings and beatings, and widespread possession of weapons sufficient to establish actionable Eighth Amendment claim); Harrison, 746 F.3d at 1299 ("confinement in a prison where violence and terror reign is actionable"); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1033 & n.12 (11th Cir. 2001), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007) (holding law clearly established that excessively unsafe jail conditions violate Eighth

Amendment).  Accordingly, Defendants' motion to dismiss on qualified immunity grounds must fail.

### F.  Plaintiff's Relief Is Limited to Nominal Damages and Injunctive Relief.

The only other bases for dismissal argued by Defendants relate to the types of relief sought by Plaintiff.  In particular, Plaintiff seeks an award of monetary damages and injunctive relief against each Defendant.  (See doc. no. 38.)  Defendants argue that any claims for monetary damages are barred and the complaint fails to state a claim for injunctive relief.  (Doc. no. 46-1, pp. 18-22.)  The Court dismissed all claims for monetary damages against Defendants in their official capacities in its May 30, 2017 Order.  (Doc. no. 62.)  As explained below, Plaintiff is limited to recovery of nominal damages and injunctive relief.

42 U.S.C. § 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Because Plaintiff alleges only de minimis mental or emotional injury from living in fear of future injury, he may recover only nominal damages.  (See doc. no. 38.)  Plaintiff alleges in later filings he suffered an injury on May 10, 2017.  (See doc. no. 79.)  However, the Court cannot consider these allegations here because they are not pled in the amended complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss . . . the court limits its consideration to the pleadings and exhibits attached thereto.") (internal quotation omitted).  Therefore, Plaintiff can only seek nominal damages for his claims.  See Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) abrogated on other

20

grounds by <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011) (finding Plaintiff could still seek nominal damages for constitutional claims).

Defendants contend Plaintiff is not entitled to an injunction against Defendants in their individual capacities because he has failed to allege a violation of a constitutional right. (<u>See</u> doc. no. 63-1, p. 19.)  However, Plaintiff has alleged a violation of his Eighth Amendment rights, as described above.  Therefore, Plaintiff's individual capacity claims for injunctive relief should not be dismissed.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 63) and all claims for monetary relief against Defendants be **DISMISSED**.

SO REPORTED and RECOMMENDED this 19th day of December, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA